IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH 1879.

### Mears *versus* Humboldt Ins. Co.

1. A policy of insurance contained a condition, " that, if the assured shall keep or have in any place on the insured premises where this policy may apply, petroleum, naphtha, benzine, benzole, gasoline, benzine-varnish, or any product, in whole or in part, of either ; or gunpowder, fireworks, nitro-glycerine, phosphorus, saltpetre, nitrate of soda ; or keep, have or use camphene, spirit gas, or any burning fluid, or chemical oils, without written permission in this policy, then, and in every such case this policy shall be void." With proper precautions the assured took and used benzine on the premises insured for the purpose of cleaning machinery. *Held*, that the words "keep or have" were intended to prevent the permanent and habitual storage of the prohibited articles, and taking them on the premises for the purpose of cleaning the machinery, was not embraced within the meaning of these words.

2. As the use of benzine was not prohibited in terms it was a question of fact for the jury whether it came within the description of burning fluids or chemical oils ; and in the absence of proof it is not a matter of which the court will take judicial notice.

3. A small portion of carbon oil had been used at the same time with the benzine in cleaning the machinery. It was not among the prohibited articles named in the condition ; not having been shown that it was of the same nature as camphene and spirit gas the court cannot take judicial notice of it.

4. Per PAXSON, J. What is intended to be prohibited in this and similar clauses of policies of insurance, is the habitual use of the prohibited articles, and not their exceptional use in some emergency.

November 3d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1879, No. 204.

[Mears *v.* Humboldt Ins. Co.]

Debt by Henrietta Mears, guardian of the person and estate of Thomas Mears, a lunatic, against The Humboldt Fire Insurance Company, of Pittsburgh, Pa.

Thomas Mears owned a large flouring mill and distillery. He insured this property in the defendant company for one year from January 8th 1874, for $1500. The policy contained, inter alia, the following condition : " Or if the assured shall keep or have in any place on the insured premises, where this policy may apply, petroleum, naphtha, benzine, benzole, gasoline, benzine-varnish, or the product in whole, or in part of either ; or gunpowder, fireworks, nitro-glycerine, phosphorus, saltpetre, nitrate of soda; or keep, have, or use, camphene, spirit-gas, or any burning fluid, or chemical oils, without permission in this policy, then, and in every such case, this policy shall be void."

The mill and distillery contained considerable machinery, including a steam-engine, boilers and metal gearing. A tough and gummy substance had accumulated on the cogs, journals, &c., of the metal gearing, and the inside of the boilers had become heavily coated with rust. In removing these accumulations the assured had on previous occasions used benzine and carbon oil as solvents. For the purpose of cleaning in the same way, he purchased some eight or ten gallons of benzine, and a small quantity of carbon oil, and stored them in his bonded warehouse, situated some forty or fifty yards distant from the insured premises, and employed William Jacobs to do the work. Jacobs carried the benzine from the warehouse to the distillery in a small tin can, and used it to soften the gummy substances above mentioned, which had accumulated on the gearing of the machinery, and when thus softened he scraped it off with a case-knife, and carefully removed it from the insured premises. He used the benzine and a little carbon oil in like manner to remove the rust from the inside of the boilers. About ten days were consumed in completing the work. Some weeks after the machinery was thus cleaned and put in good order, a fire occurred on the 30th of September 1874, which resulted in a total destruction of the property. It did not originate from the benzine used in cleaning, nor occur while the work was in progress.

At the trial before Stowe, P. J., the defendant submitted the following points, to which are subjoined the answers of the court:

2. That if the jury find from the evidence that, after the issuing of the policy in suit, and previously to the fire, Thomas Mears, the assured, purchased from eight to ten gallons of benzine to use in cleaning the machinery, boiler and engines of the distillery, and that with the knowledge and by the direction of the said Mears, the witness, William Jacobs, used nearly the whole of said benzine in the distillery in cleaning the engine, boilers and machinery, in the manner stated by said witness, and such use extended over a

[Mears v. Humboldt Ins. Co.]

period of about two weeks, this was a violation of one of the conditions of the policy, and avoided the same.

"Affirmed."

3. That if the assured, prior to the fire, kept or had upon the premises covered by the policy in suit, benzine, this avoided the policy, and it is immaterial that the purpose of having benzine upon the premises may have been to clean the machinery.

"Affirmed."

4. That if the assured, prior to the fire, kept or had upon the premises, covered by the policy in suit, carbon oil, this avoided the policy, and it is immaterial that the purpose of having the said oil upon the premises, may have been to clean flues or machinery.

"Affirmed."

5. That if the jury find from the evidence, that the assured, Thomas Mears, had upon the premises covered by the policy in suit, to wit, in the boiler room, a barrel in which was contained carbon oil, this was a violation of one of the conditions of the policy, and avoided the same.

"Affirmed."

6. That if with the consent, or by the direction of the assured, benzine or carbon oil was taken upon the premises covered by the policy in suit between its date and the time of the fire, one of the conditions of the policy was violated, and the policy was avoided.

"Affirmed."

Verdict for defendant, and after judgment, plaintiff took this writ and alleged that the court erred in the answers to the above points.

*Weir & Gibson* and *J. Dunbar*, for plaintiff in error.—It will be observed that this condition of the policy does not prohibit the use of benzine on the insured property. It only forbids the assured to keep or have it there. The words keep and have are employed in the disjunctive. They are synonymous terms in the connection used in this instance. They signify, to hold, to retain one's possession or power. They were evidently intended to prevent the assured from the permanent and habitual holding and retaining the forbidden article in his possession, on the property insured, as a place of storage, and were not intended to prohibit him from having it there in such quantity as might be necessary to clean the machinery and keep it in good order. The contract does not forbid its use on the machinery or other parts of the property insured. In the absence of a stipulation against this, the assured had the undoubted right to use it for this or any other purpose. He could not exercise this right without the presence of the article. To keep or have it there was a necessary incident to the right to use it. Its presence for this purpose was not keeping or having it on the insured premises, within the meaning of the condition of the policy.

11 NORRIS—2

It will be observed also that the last or concluding paragraph of the condition does not prohibit the assured from keeping, having or using, benzine and carbon oil by name. The language is, that he shall not keep, have or use camphene, spirit gas, or any burning fluid, or chemical oils.

These words do not embrace benzine and carbon oil, and cannot be invoked as a defence, unless upon the theory that they are articles which are covered by the words burning fluid. But these words are to be read with reference to the connection in which they are used, and must be interpreted in view of this to mean burning fluid, such as camphene, spirit gas, and chemical oils.

To reach the true intention of the parties, the words of this part of the contract are to be read in a restricted sense. That is the prohibition of the enumerated articles was directed against their permanent and habitual use, and not against their temporary and occasional use, for the purpose of cleaning, repairing and keeping the insured property in good order and condition.

*M. W. Acheson* and *S. C. Schoyer*, for defendant in error.—It is not to be expected that a distillery will be used as a place for the storage of benzine or carbon oil, or that they will be kept there as articles of merchandise. Therefore, if the interpretation which the court below gave to the condition of the policy is rejected, it is difficult to perceive what effect can be given to the prohibition : Birmingham Fire Ins. Co. *v*. Kroegher, 2 Norris 64; McClure *v*. Watertown Fire Ins. Co., 9 Id. 277; Glen *v*. Lewis, 8 Exch. 607; 20 E. L. & E. 364.

The stipulations contained in the condition of the policy in the present case are " promissory warranties," and must be " exactly and literally fulfilled," otherwise, the policy is avoided by its express terms. 1 Arnold's Ins. 577; May on Ins., sect. 156; Glendale Woollen Co. *v*. Protection Ins. Co., 21 Conn. 19; Wilson *v*. Hamden Fire Ins. Co., 4 R. I. 159.

Mr. Justice PAXSON delivered the opinion of the court, November 17th 1879.

The first assignment of error relates to the use of benzine upon the insured premises. It was contended that the court erred in instructing the jury in answer to the defendant's second point, that if Mears, the assured, purchased from eight to ten gallons of benzine, and used nearly the whole of it in cleaning the engine, boilers and machinery of the distillery, and such use extended over a period of about two weeks, there was a violation of one of the conditions of the policy in suit and avoids the same.

The condition in the policy referred to is as follows : " Or if the assured shall *keep or have*, in any place on the insured premises where this policy may apply, petroleum, naptha, benzine, benzole,

[Mears v. Humboldt Ins. Co.]

gasoline, benzine-varnish, or any product in whole or in part of either ; or gunpowder, fireworks, nitro-glycerine, phosphorus, saltpetre, nitrate of soda ; or keep, have or *use* camphene, spirit gas or any burning fluid or chemical oils, without written permission in this policy, then and in every such case, this policy shall be void."

It will be observed that in the first portion of this condition the provision is that the assured shall not "keep or have" any of the enumerated articles upon the insured premises, while in the latter portion, the "use" of certain other articles is prohibited, in addition to the restriction contained in the first.

The words "keep or have," as applied to the articles first enumerated, evidently were intended to prevent a storage of the prohibited articles upon the premises, either permanently or habitually. While the words are used in the disjunctive, they are evidently synonymous, and signify to retain in possession. It would be straining a point to say that bringing a prohibited article upon the premises upon a single occasion, and for the sole purpose of cleaning machinery, was keeping or having it there within the meaning of the policy. The evidence shows, and it is not denied, that the can of benzine used for the purpose above stated was not kept on the insured premises during the period of its use, but was stored in a bonded warehouse, fifty or sixty feet distant. The witness, William Jacobs, who cleaned the machinery, got it from the warehouse from time to time as he needed it.

The assured did not keep or have benzine upon the insured premises within any reasonable view of the meaning of the policy. But it is said he used it there, and that this avoids the policy. The *use* of benzine is not prohibited in terms. If prohibited at all it must be because benzine comes within the description of burning fluid or chemical oils. We must ascertain the meaning of these general words, used in the latter portion of the condition of the policy, by referring to the preceding special words. Under this construction the words burning fluids or chemical oils must be held to mean only such burning fluids and chemical oils as are in their nature like camphene or spirit gas. This was the construction placed upon the identical words in Wheeler v. The American Central Insurance Company, decided by the St. Louis Court of Appeals, in March 1879, and reported in the Western Insurance Review, vol. 12, p. 252. The same rule is laid down in Wood v. The Northwestern Ins. Co., 46 N. Y. 421 ; Morse v. Buffalo Fire and Marine Ins. Co., 30 Wis. 534 ; and Wills v. Hanover and Germania Fire Ins. Co., The Reporter, vol. 8, p. 343.

There was no proof that benzine was of like nature with camphene or spirit gas. It is not a matter of which the court will take judicial notice. It is a question of fact, to be found by a jury upon evidence. See Wood v. The Northwestern Ins. Co. and Morse v. Buffalo Fire, &c., Co., *supra.*

[Mears *v.* Humboldt Ins. Co.]

We are not disposed to give the word "use" in this policy the narrow construction claimed for it. It must have a reasonable interpretation, such as was probably contemplated by the parties at the time the contract was entered into. Nearly every policy of insurance issued at the present time contains this condition, or a similar one. What is intended to be prohibited is the habitual use of such articles, not their exceptional use upon some emergency. The strict rule claimed by the defendants would prevent the assured from painting his house or cleaning his furniture, as it would be difficult to do either without using some of the prohibited articles. If the company intended the condition to cover such exceptional uses, it ought to have been plainly expressed, and probably would have been. That any one would knowingly accept a policy with such a clause is not probable. We are not without abundant authority upon this point. See Dobson *v.* Sotheby, M. & M. 20; Shaw *v.* Robberds, 6 Ad. & E. 75; Grant *v.* Howard Ins. Co., 5 Hill 10; Van Valkenburgh *v.* The Ins. Co., 70 N. Y. 605; Franklin Ins. Co. *v.* Chicago Ice Co., 36 Md. 102; Raferty *v.* The Ins. Co., 29 Maine 97; O'Neil *v.* Buffalo Fire Ins. Co., 3 Comstock 122. The case of The Birmingham Fire Ins. Co. *v.* Kroegher, 2 Norris 64, cited by defendants, does not apply. In that case the assured kept a barrel of petroleum for sale on the premises covered by the policy.

As bearing upon this point, it is proper to observe that permission to make repairs was endorsed upon the policy. While no point was apparently made of this in the court below, and we would not therefore reverse for this reason, the fact is entitled to weight in considering this question. The permission to repair the machinery carried with it the right to use such means as might be necessary for that purpose.

The second assignment also refers to keeping benzine upon the premises, and is covered by what has already been said. The remaining assignments relate to the use of carbon oil. It was proved that a small quantity had been used at the same time as the benzine, in cleaning the machinery. It is sufficient to say that carbon oil is not among the prohibited articles. It is not named in the condition. If it was of the same nature as camphene and spirit gas, or other enumerated articles, it was not shown to be so, and the court cannot take judicial notice of it. This principle has already been sufficiently referred to.

All of the assignments of error are sustained.

Judgment reversed and a *venire facias de novo* awarded.