Furdock *v.* Washington Mutual F. & S. Ins. Co., Appellant.

Argued October 2, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*W. N. Conrad,* for appellant.

*Lisle D. McCall,* and with him *Alexander S. Scribner,* for appellee.

OPINION BY BALDRIGE, J., December 16, 1933:

This action was brought on an insurance policy, in the sum of $1,800, covering a two-story frame house and contents, issued by the defendant on June 16, 1926, effective for a period of five years. The house was occupied by the plaintiff and her husband until 1928, when he died, and she continued to occupy it until May, 1929. During the life of the husband, kerosene in a metal drum of a capacity of 50 gallons was kept in the cellar. This property, used as a home, is in a

rural district, and the kerosene no doubt was kept primarily for their own use. The few sales of kerosene that were made were evidently to accommodate their neighbors. The plaintiff vacated the house in 1929 and leased it to Floyd Sprague, who remained in it for one year, when the plaintiff again took possession of it. Sprague also kept some kerosene on the premises, not exceeding 15 gallons at a time. But there is no evidence that any kerosene was on the premises after plaintiff resumed possession in June, 1930. During the summer of 1930 the defendant recognized that the insurance was in force by paying a small claim for loss sustained through a hail storm, and, in January, 1931, made an assessment on the policy, collecting from the plaintiff the sum of $12.40.

A fire entirely destroyed the premises on April 3, 1931. Suit was brought, and the only defense set up was that the house had been vacant for more than ten days. On the second day of the trial, the defendant abandoned its original position and filed an additional affidavit of defense by permission of the court, alleging that kerosene was kept on the premises, contrary to the provisions of the policy and in violation of the regulations of the Pennsylvania State Police, governing the storage of kerosene, etc. The court held that there was no evidence of any violation of the law or the provisions of the policy, and submitted to the jury the other issues of fact, consisting of alleged fraud and the amount of the loss. A verdict for the plaintiff of $1,378 was rendered. This appeal followed.

The sole question raised by the appeal is whether the storing of kerosene on the premises, as disclosed by the record, defeated the plaintiff's right of recovery. The policy provided that it should be annulled if the insured kept "petroleum, or any of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for lights and kept for sale according to law but in quan-

tities not exceeding five barrels, provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light.)'' Certain rules and regulations adopted by the state police, under the authority of section 1 of the Act of April 27, 1927, P. L. 450, No. 291 (35 PS §1181), providing, inter alia, that not more than five gallons of kerosene shall be kept in any building, except in safety containers or tank, etc., were offered to the jury. We think it is unnecessary to analyze these rules and regulations, decide their effect upon the policy, or further mention them, as the defendant failed to prove that there was any kerosene whatever on the premises after the plaintiff last took possession, which was approximately one year before the fire. The defendant endeavored to prove the presence of kerosene in the house by showing that a metal drum was taken from the cellar of the burned premises, which bore evidence of bulging, which the defendant contended was the result of containing kerosene which had exploded. The court properly held that the witness, a machinist and welder, called to establish that contention, did not qualify as an expert to give an opinion on those technical questions. The record, therefore, is devoid of any testimony that kerosene was on the premises after Sprague's removal.

We think the principle involved is ruled by McClure v. Mutual Fire Ins. Co., 242 Pa. 59, 88 A. 921. An attempt was made in that case to defeat a recovery on an insurance policy on the ground that there was a violation of its conditions in the keeping of gasoline, illuminating oil and gun powder on the insured premises, thereby increasing the hazard. The tenant in the insured building conducted a general store and kept the prohibited articles as merchandise for sale to his customers. About two years prior to the fire, the store business was closed, and the merchandise, including the gasoline, etc., was removed. The insured paid thereafter two annual premiums. The question arose

as to whether the policy had been rendered absolutely void or only suspended during the time the objectionable merchandise had been kept on the premises. Mr. Justice ELKIN, in a very exhaustive and well considered opinion, reviewed many of the authorities, some of which were in conflict. In the course of this opinion, he said (p. 63): "When a prohibited article had been kept or used on the insured premises, but the insurer had not declared a cancellation or forfeiture of the policy on that account, and the keeping or use of the article had been discontinued prior to the happening of the fire......the keeping or use of the article did not absolutely avoid the policy, but merely suspended it during the continuance of the violation [citing numerous authorities]."

The appellant relies largely upon the case of Kramer v. Rhode Island Ins. Co., 97 Pa. Superior Ct. 27, where merchandise of the kind usually kept in a grocery, meat market and dry goods store was covered by the policy, which provided that, unless otherwise stipulated, the insurers should not be liable for a loss while explosives were kept, used and allowed on the premises. The evidence clearly showed that there was a quantity of dynamite at the plaintiff's place of business, kept for sale to miners. This case is readily distinguishable in its facts from the one at bar.

This disposes of the only issue raised in the statement of the questions involved.

Judgment is affirmed.