AMERICAN CENTRAL INSURANCE COMPANY V. MARY E. GREEN ET AL.

Decided June 9, 1897.

**1.  Conclusion—Failure to File—Bill of Exceptions.**

Where defendant moved the court, trying the case without a jury, to file written conclusions of fact and law, and the motion was granted, but no such conclusions filed, failure to do so was not cause for reversal, in the absence of a bill of exceptions.

**2.  Insurance—Gasoline Stove.**

A policy on household goods prohibited the use of gasoline on the premises, by a form of contract appropriate to the insurance of a trading or manufacturing establishment. Upon the issue of avoiding the policy under this clause it was proper to admit evidence that the use of gasoline for domestic purposes was customary in the town.

**Same—Domestic Use—Custom.**

An insurance policy was not avoided by the use of gasoline for cooking purposes, where a gasoline stove was among the articles insured, and its use for domestic purposes was customary in the town and did not cause the loss, though the contract provided that the insurance should be made void by the use of gasoline on the premises, "any usage or custom of trade or manufacture to the contrary notwithstanding."

**4.  Same.**

Custom of insurance companies not to allow the use of gasoline stoves, except by permit attached to the policy upon payment of extra compensation, was inadmissible.

APPEAL from McLennan.   Tried below before Hon. L. W. GOODRICH.

*Harris & Knight*, for appellant.—1.  The undisputed evidence showing that the plaintiff habitually kept and used gasoline in the dwelling and on the premises containing the insured property for cooking purposes, during the term and in violation of the policy sued on, and without the knowledge or consent of the defendant, the court erred in rendering judgment in favor of the defendant.   Insurance Co. v. Faires, 35 S. W. Rep., 56; Gunther v. Insurance Company, 134 U. S., 110; 1 Wood on Fire Insurance, sec. 58; 1 May on Fire Insurance, sec. 232; 2 Beach on Fire Insurance, sec. 745; McFarland v. Insurance Co., 49 N. W. Rep., 253; Garretson v. Insurance Co., 45 N. W. Rep., 1047; Insurance Co. v. Board of Coms., 45 Am. St. Rep., 306.

2.  The court erred in admitting any evidence touching any usage or custom to use gasoline in dwellings, because usage and custom can not be received as to matters upon which the contract of the parties is explicit, as in this case.   Weinsteine v. Harrison, 66 Texas, 546; Bank v. Insurance Co., 62 Texas, 461; Harrell v. Zimpleman, 66 Texas, 294; Tucker v. Smith, 68 Texas, 473; Moore v. Kennedy, 81 Texas, 144, 146; 4 Willson C. C., sec. 136.

3.  The court erred in holding that any valid usage or custom in respect to the use of gasoline in dwellings for domestic purposes was established in this case, because custom and usage, to be valid, must be certain, uniform, general, and so long and well established that every one contracting in reference to the matter is presumed to know of it, and in this case the evidence wholly fails to show any such certain, uniform, con-

tinuous, and long and well established custom. On the contrary, the evidence, viewed in the strongest light for the plaintiff, only showed the use of gasoline for cooking purposes by a small per cent of house holders at a particular season of the year and when the ladies of the household did their own cooking, and this use was shown to be irregular and not long or well established. Wootters v. Kauffman, 67 Texas, 488; Parks v. O'Connor, 70 Texas, 377; Woldert v. Arledge, 33 S. W. Rep., 372; Laws. on Usage and Custom, 36; Smith v. Ins. Co., 65 Fed. Rep., 765, 992.

4. The evidence showing a general and well established usage on the part of all the insurance companies to prohibit, as a rule, the keeping and use of gasoline on premises containing insured property, and further showing that the keeping and use of gasoline under such circumstances was only allowed under the terms and conditions of a special contract regulating and prescribing its use, in consideration of an extra premium, and also showing, or tending to show, that the plaintiff was informed of this regulation, the court erred in refusing to find for the defendant. Laws. on Usage and Custom, 36.

5. The court erred in its construction of the gasoline provision of the policy contained in the policy sued on, in holding that it had no application to gasoline in dwellings used for cooking purposes. Ins. Co. v. Faires, 35 S. W. Rep., 56; McFarland v. Ins. Co., 49 N. W. Rep., 253.

*Clark & Bolinger*, for appellees.—The occasional use of gasoline for domestic purposes was not inhibited by the policy, and its printed terms and conditions, when properly interpreted according to the terms employed, manifest that the domestic use of gasoline or any other prohibited article was not in the minds of the parties to the contract at the time of its execution, but apply and were intended to apply to the keeping of such inhibited articles in bulk for sale or for purposes of manufacture. Insurance Co. v. Bills, 29 S. W. Rep., 1063; Harper v. Insurance Co., 22 N. Y., 441; Pindar v. Insurance Co., 36 N. Y., 648; Whitmarsh v. Insurance Co., 16 Gray, 359; Putnam v. Insurance Co., 4 Fed. Rep., 765; Mears v. Insurance Co., 92 Pa. St., 15; Hall v. Insurance Co., 58 N. Y., 292; 1 May on Insurance, 239, et seq.; Richards on Insurance, 308; Fraim v. Insurance Co., 170 Pa. St., 151; Faust v. Insurance Co., 91 Wis., 158; Maril v. Insurance Company, 95 Ga., 604.

COLLARD, ASSOCIATE JUSTICE.—Suit by Mrs. Mary E. Green, joined by her husband, Joseph Green, against the American Central Insurance Company on a fire insurance policy for $1500, issued by defendant in the lower court, on her household and kitchen furniture, useful and ornamental, sewing machines, mirrors, plate and plated ware, etc., trunks, valises, and family stores, in certain two and one-story frame building on lots 8, 9, and 10, block 18, Ethel avenue, Provident Heights addition to the city of Waco, Texas, insuring term beginning 1st December, 1894, and ending the first day of December, 1895. The property insured was removed, pending the life of the policy, to a one-story frame building,

shingle roof, occupied by the insured, situated at No. 416 on the south side of South Fifth street, Waco, Texas, and by written consent of the company the policy was made to apply to the same property in the last mentioned house.

The defendant answered by general denial and plea that plaintiffs, contrary to express provisions of the policy and without notice to it, after the issuance of the policy and up to date of the fire, used and allowed, on the premises in which the goods were at all times situated, gasoline, of which defendant knew nothing until after the fire, the policy providing that the entire policy, unless otherwise provided in the agreement indorsed thereon or added thereto, should be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises benzine, benzole, dynamite, ether, fireworks, greek fire, gunpowder, etc.

Plaintiffs replied that the provision of the policy mentioned did not contemplate, nor was it intended to cover by either party the use of gasoline for domestic cooking purposes, but was intended to cover the keeping of gasoline for sale as part of the stock in trade of a merchant, or the use of gasoline in manufacture solely, and no forfeiture was incurred by its use, as in this case, for domestic purposes only; and that the language of the policy as to usage or custom of trade or manufacture does not include nor prevent the pleading of other usages or customs; that it is the custom and usage of the people of Waco and of the State to use gasoline for cooking purposes, especially during the warm season; that the custom is general and universal, and the same is not a custom of trade or manufacture within the meaning of the policy, and that such custom was known to defendant at the time of the issuance of the policy. Plaintiffs also pleaded that they were ignorant of the conditions of the policy, and the information was withheld from them by defendant's agent that he would authorize the use of gasoline upon the payment of $1 additional premium; that since the policy was issued the defendant and all others doing business in Waco have abolished the charge of $1 extra for permitting the use of gasoline for cooking and domestic purposes, and now permit gasoline to be used for such purposes without question as to forfeiture; that the fire was not caused by gasoline, and never reached the gasoline in the house; that plaintiff only kept it in a small quantity at a time, not more than three or four gallons, kept none for sale, and did not permit it to be stored on the premises.

Defendant excepted to so much of the supplemental petition as set up custom in the use of gasoline, and that the fire did not originate from the use of gasoline; filed general denial, and specially averred that at the time of the issuance of the policy there was and had been for many years a general custom on the part of all insurance companies doing business in Texas not to permit gasoline to be kept, used, or stored on insured premises, except for an additional consideration and upon conditions of a special permit in writing to be attached to and made a part of the policy. The plea gives the form of such permit, showing that it is

based on a special consideration, together with a "caution" as to the danger of gasoline stoves and the danger of the explosion of gasoline, and its generating explosive gas at ordinary temperature in case of leaky cans.

A jury was waived and the case was tried by the court, who rendered judgment for plaintiff for the amount sued for, from which the company has appealed.

. It was established by agreement of parties and proof that plaintiffs would be entitled to recover, as they did, unless such recovery was defeated by the use of gasoline contrary to the policy. It was proved that plaintiff, Mrs. Green, used gasoline for purposes of heating a gasoline stove for cooking on the premises where the insured property was kept in the summer months of 1895, and used it along until the fire in September, for a gasoline cook stove. The testimony supports the conclusion that gasoline was generally used about Waco for cooking on gasoline stoves, as plaintiff used it, and that plaintiffs had no permit from defendant to so use the prohibited article; and it was shown that the fire was not caused by gasoline. The fire caught in another room of the house, and not in the kitchen, where there was some gasoline kept in a can at times. It was removed before the fire reached it. All the insured property was used by Mrs. Green in residence and keeping house. We take it that the court decided in favor of plaintiffs on issues necessary to sustain the judgment where the testimony was conflicting.

There was testimony to the effect that plaintiffs did not know a permit was necessary to use gasoline, nor did they know upon what terms it was customary for insurance companies to grant such permits, though it was proved that at the time in question it was a general and invariable usage of insurance companies not to permit the use of gasoline for cooking purposes except for extra premiums of $1 per year on policies of $1000 or less, and 10 cents per $100 on policies above $1000. This was allowed only by special permit attached to the policy known as a "gasoline permit."

· The policy sued on provided that "the entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, should be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises benzine, gasoline, greek fire, gunpowder not exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine, or other explosives; phosphorous, petroleum or any of its products of not greater inflammability than kerosene of the United States standard (which last may be now used for lights and kept for sale according to law, but in quantity not exceeding five barrels, provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light.") The policy expressly provides that "it is made and subject to the foregoing stipulations and conditions."

The policy was for $1500 on "household furniture," useful and ornamental, and other named articles and "family stores." The insured property was removed from the premises in which they were insured into an-

other house in Waco by written permission of the company, as alleged by plaintiff, where it was totally destroyed by fire during the term of insurance. In the list of kitchen furniture listed by plaintiff as having been destroyed, and listed in the proof of loss furnished the company, are one cook stove, valued at $50, and one gasoline stove valued at $30, and it was agreed by the parties that notice and proof of loss were given as required by the policy.

*Opinion.*—1. At the conclusion of the trial the court decided in favor of plaintiffs and delivered an opinion setting forth his views of the case, and thereupon defendant moved the court to file a written statement of his conclusions of fact and law, which motion was sustained by the court, but we find no such conclusions in the record, and conclude that they were not filed. There was no bill of exceptions reserved to such failure, and it will be presumed that it was waived. Sup. Commandery Knights of the Golden Rule v. Rose, 62 Texas, 322; Cleveland v. Sims, 69 Texas, 157; 2 Willson's C. C., sec. 812. The assignment of error complaining of the failure of the court to file conclusions is overruled.

2. The court admitted testimony as to usage and custom of using gasoline in gasoline stoves used for cooking for domestic purposes in dwellings in Waco, to which defendant excepted, but the court stated that the objections would be considered in passing upon the case; defendant excepted. The court did not rule on the question. We take it that the court admitted the testimony and considered it in deciding the case; in doing so there was no error. It was not repugnant to the stipulations of the contract.

Evidently the form of the policy was that used in insuring shop keepers, traders, and manufacturers. The entire clause prohibiting the use of named inflammable substances was intended for such insurance, and in all its terms was not adapted to insurance of a residence or its contents. The clause provides that it shall be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept or used on the above described premises, certain articles, including gasoline. The same clause allows and qualifies the use of kerosene; "which last may be used for lights and kept for sale according to law," etc., thus showing that the form of the policy was not for insurance of household goods and supplies. But take the language of the phrase as to custom or usage, "any usage or custom of trade or manufacture," and it will be seen that it is only such usage or custom that is excluded in construing the prohibition. The company prepares its policies; the clause in question was for its own protection, to bind the insured, and it should be construed most favorably for the insured. It should not be construed to exclude usage or custom in domestic affairs. On the contrary, having specified the particular custom that could not be resorted to to explain the intent of the prohibiting clause, it would not only be construed to mean that custom only, but it should be construed to allow other customs applicable to the subject of insurance. Nothing should be implied

or supplied in favor of the insurer, more onerous to the insured, that
is not specified in the contract. 1 May on Ins., secs. 175, 178. The rule
should be strictly applied to prevent a forfeiture or to.to favor the in-
demnity. Id., sec. 2. There was no error in admitting the testimony of
custom. The foregoing also disposes of the fifth assignment of error.

3. Appellant contends by assignment that as the undisputed evidence
showed that the plaintiff kept and used gasoline in the dwelling and on
the premises containing the insured property for cooking purposes dur-
ing the term and in violation of the policy and without the knowledge or
consent of defendant, "the court erred in rendering judgment in favor
of defendant." Of course it was intended to say erred in rendering judg-
ment for "plaintiff" and we so read the assignment.

We can not sustain the assignment. The policy covered and insured all
household and kitchen furniture and family stores, and included kitchen
furniture and kitchen supplies, the gasoline stove, and the gasoline kept
for heating it, both used for cooking for the family. They were not used
habitually as appellant says, but in the summer months, as was generally
done in the community. It was necessary to ascertain by testimony what
property was insured, and when it was shown that the gasoline stoves.
and the gasoline were insured, the prohibitory clause as to using and keep-
ing gasoline for such purposes was repugnant to the contract of insur-
ance, and should be held not to apply to them, as it would destroy that
part of the contract.

In Harper v. Insurance Company it was held "that insurers were liable
for loss occasioned by the necessary and customary use of camphene in
plaintiff's business, although the use of that article was prohibited in
general terms in the printed conditions annexed to and forming a part of
the contract." The written part of the policy, including plaintiff's print-
ing and book materials, stock, etc., inserted the words, after the descrip-
tion of the stock, "privileged for a printing office, bindery," etc. The
court held that the written part of the policy should prevail over the
printed portion. The same court, in Harper v. Insurance Company, 22
New York, 443, in regard to the former case, said that "by insuring the
plaintiff's stock with the privilege of a printing office and bookbindery,.
the use of such materials, including camphene, as were necessary in that
business was allowed, otherwise the contract was a mere delusion." The
same principle was reaffirmed in the last case cited.

In Pindar v. Insurance Company, 36 New York, the description of the
goods insured was, such goods as are usually kept in a country store. It.
was held that this admitted proof of what goods were usually kept in a
country store. The proof showed that gunpowder and spirits of turpen-
tine were so kept. The court say: "We have seen that in the present.
case the policy covered gunpowder and spirits of turpentine, and when
these articles are insured a printed clause prohibiting their being kept
is plainly repugnant to the written clause insuring them.   *   *   *   The
policy was therefore not void at the time of the fire by reason of keeping
the spirits of turpentine and gunpowder. The insurer is presumed to

know what articles are usually kept in country stores, and consequently the policy covered the powder and turpentine."

In Whitmarsh v. Fire Insurance Company, 16 Gray (Mass.), the policy insured plaintiffs on their stock in trade consisting of the usual variety of a country store (except dry goods), with permission to keep and sell burning fluid and gunpowder as per application, and stipulated that if certain articles denominated hazardous and extra-hazardous are kept on the premises, the policy should be void unless otherwise specially provided for. It was held that the keeping of some of the prohibited articles, if usually kept for sale in a country store, did not avoid the policy, and that parol proof was admissible to prove that oil, etc., prohibited, were usually kept in a country store.

In the case at bar it was proved that gasoline was usually kept and used for cooking on a gasoline stove in dwellings, and they were included in the description of the property insured as household furniture and family supplies.

In Putman v. Insurance Company, 4 Federal Reporter, it was provided that if petroleum, naphtha, gasoline, benzine, benzole be kept without written permission the policy shall become void. It was held that the use of naphtha on the insured premises for illuminating purposes was not forbidden; that the use of the article for such purpose was not within the meaning of the term "kept" as employed in the prohibitory part of the policy.

In Mears v. Insurance Company, 92 Pennsylvania State, 15, where the policy declared it should become void if certain enumerated combustible articles were kept or had or used, it was held that the words "have" and "keep" were intended to prevent the permanent and habitual storage of the prohibited articles, and that taking them on the premises to clean machinery was not embraced within the meaning of those words. It was the habitual use of the articles that was forbidden, not their exceptional use in cases of emergency. See also Fraim v. Ins. Co., 32 Atl. Rep., 613.

In Hall v. Insurance Company, 58 New York, 292, is was held that where a policy insured such materials as were in ordinary use in the business it authorizes their use, though such use is prohibited by the policy; and it was also held that, to authorize the use of the prohibited article, it was enough to show that it was in common use, and that it need not be shown that its use was necessary. The court, commenting on the case of Harper v. Insurance Company, supra, explained that in that case it was proved that the article was necessary, and hence it was decided that when the article was commonly used and necessary it could be used without violating the contract, but that it was not decided "that the right would not exist when the material was ordinarily used in the business." "It is," says the opinion, "an elementary rule that underwriters are to be assumed to know the usual course of conducting business in connection with which they issue policies. Hence when a policy is issued upon the stock of goods in a specified business the underwriter is presumed to know what goods are usually kept by those engaged in the business.

Steinbach v. Ins. Soc., 54 N. Y., 90. When a policy is issued, as in the present case, upon the materials used in the business of photography, it includes all such as are in ordinary use, although some other things might be substituted therefor."

Fraim v. Insurance Company, 170 Pennsylvania, decided as follows: Where a policy of insurance on a building used for silver plating contained a stipulation that "this entire policy shall be void if (any usage or custom to the contrary notwithstanding) there be kept, used, or allowed on the premises * * * gasoline," and gasoline was used in the plating process and for cleaning tools, and a barrel of it was kept in an uninsured building about fifteen feet from the factory, from which it was drawn when needed and carried into the factory, where it was emptied into a kettle holding three or four gallons, and on the night when the factory was destroyed there was no gasoline in the kettle and the gasoline was not the cause of the fire, it was held proper to admit testimony that gasoline was necessary in carrying on the business, that it was used when the policy was issued, and continued to be used up to the time of the fire, and it was held proper to refuse a charge that if plaintiffs used gasoline on the premises during the life of the policy, the policy by its terms became void and there could be no recovery thereon. The court states the rule: "Policies are to be construed largely according to the intention of the parties, and for the indemnity of the assured and the advancement of trade. Facts and circumstances dehors the instrument may be proved to discover the intention of the parties."

In Faust v. Insurance Company, 91 Wisconsin, 158, it was held, that "where a contract of insurance in the written portion covers property to be used in conducting a particular business, the keeping of an article necessarily used in the business will not avoid the policy, though expressly prohibited in the printed conditions of the contract." In the printed portion of the policy was the condition, "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, benzine." It also contains the following: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, and conditions as may be indorsed hereon or added hereto."

It will now be seen that even when the policy excludes usage and custom applicable to the subject, still it may be proved to show that the article in question, prohibited, was used in the business.

Maril v. Insurance Company, 95 Georgia, 604, is in line with other cases herein cited. It holds that the policy on business material is not rendered void by the condition stated if the substance used is a necessary, usual, and customary incident to the business, and kept only in such quantities and used only in such manner as, in view of the subject of insurance, must have been in contemplation of the parties at the time the policy was issued.

The principle declared in the case of Hall v. Insurance Company, supra, a New York case, that it is sufficient to prevent a forfeiture if the prohibited article is ordinarily used in the business, without showing that it was necessary, commends itself to us. The underwriter must be presumed to know what is so used, and such use is permitted as was in contemplation of the parties at the time the contract was executed. Our Supreme Court, in the opinion of Justice Brown in the case of Hibernia Insurance Company v. Bills, 29 Southwestern Reporter, 1065, recognizes the doctrine declared in the foregoing cases. He says: "If the conditions or warranties be repugnant to the portions of the policy describing the subject of insurance, the condition must yield to that portion which expresses the terms of liability, as if, for instance, the body of the policy grants insurance upon a stock such as is usually carried in a 'country store,' or such as is usually carried in a 'retail store,' and the conditions prescribe that the carrying in stock of certain articles named as extra hazardous will cause a forfeiture of the policy, and it appears from the evidence that the articles expressly named are usually carried in such stock and embraced in the terms of the policy describing the subject, the clause of forfeiture must yield to the language of the body of the policy, and the forfeiture will not be enforced," citing Wood on Insurance, 169, section 64, and Pindar v. Insurance Company, 36 New York, 648.

The policy before us, as shown by parol testimony, covered and insured the gasoline stove and the gasoline used to heat it for domestic purposes. The terms household furniture and family supplies were explained by the testimony that gasoline stoves were used as Mrs. Green used her gasoline stove, and so included in the insuring part of the policy, and, according to the authorities, the policy would not be forfeited even if the clause therein as to custom could be applied to the subject of insurance. If the stove were insured its use would be permitted, and it could only be used in connection with gasoline. It is not shown that any unusual quantity of gasoline was kept in supply, or that it caused or assisted the fire. The contrary is shown.

Property insured can not be prohibited in its use. Such a contract if enforced would destroy itself, and there would be no contract. The household furniture and supplies were, in contemplation of the parties, for use, and whatever was usually and ordinarily used in connection with them was permitted, notwithstanding the prohibition. What was so usually used was a matter to be ascertained by testimony, and when ascertained it was covered by the insurance. Suppose the use of coal or wood had been prohibited, we would hardly require testimony that such prohibition was repugnant to the insuring contract and therefore of no force. In cases of doubt evidence may supply the want of certainty. This was done in this case as fully as the law demands.

4. The testimony of usage was admitted correctly to explain what property was insured, and if prohibited articles were insured that their use would not avoid the policy.

Defendant contends that as it was shown it was the custom of insur-

ance companies not to insure gasoline or allow the use of gasoline stoves when insured property was exposed to hazard, therefore the court should have rendered judgment for defendant. Such a conclusion by the court would have added to the contract and incorporated in it something it did not contain. Custom is admitted to explain, not to make contracts. Custom may be applied to determine the meaning of contracts and the subject thereof. Because it is the custom of insurance companies to prohibit by contract the use of gasoline in dwellings insured, it can not take the place of the contract and bind the insured when he has not made such a contract. Railway v. Fagan, 72 Texas, 131; Harrell v. Zimpelman, 66 Texas, 294.

What we have said in the foregoing disposes of every question raised by appellant's assignment of error adversely to appellant. We find no error in the trial of the case nor in the judgment of the lower court, and it is affirmed.

*Affirmed.*

Writ of error refused.