## Springfield Fire and Marine Insurance Company v. Thomas L. Wade.

### No. 1112. Decided June 19, 1902.

**1.—Fire Insurance—Gasoline—"Kept, Used, or Allowed."**
 A policy of fire insurance conditioned to be void if gasoline was "kept, used, or allowed" on the insured premises, was not avoided by bringing gasoline into the house, on a single occasion and for temporary use, though the loss was occasioned thereby. (Pp. 599-603.)

**2.—Same—Words Construed.**
 The word "kept," in the clause of avoidance, implies storage, with some degree of permanency in its continuance; "used," in connection with kept, a like permanent or habitual use of it; and "allowed," not mere introduction upon the premises, but such keeping or using by others than insured. (Pp. 600-602.)

**3.—Same—Case Stated.**
 Upon premises insured with a clause of avoidance if gasoline was kept, used or allowed on the premises, the wife of insured brought and partly used a gallon of gasoline in the afternoon; the unused portion, left standing in an open vessel, was that night accidentally ignited by a lighted match being dropped into it. Held, that this was not such keeping, using, or allowing of gasoline on the premises as avoided the policy. (Pp. 599-603.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

*Alexander & Thompson* and *S. J. Hogsett,* for appellant. *(Thomas Bates,* of counsel, also filed a printed argument). The clause contained in the policy of insurance sued on, providing that the policy shall be null and void if gasoline be kept, used, or allowed on the insured premises, contrary to the terms of the policy, is reasonable and valid, and a violation of said clause or condition so contained in the policy will avoid the policy. Insurance Co. v. Faires, 35 S. W. Rep., 55; Hutton v. Insurance Co., 43 Atl. Rep., 219; McFarland v. Insurance Co., 49 N. W. Rep., 253; Garretson v. Insurance Co., 45 N. W. Rep., 1047; Insurance Co. v. Gunther, 116 U. S., 113; Hotel Co. v. Insurance Co., 25 Ins. Law Jour., 854.

Where a policy of insurance contained a gasoline stove permit, as follows: "Permission is hereby given for the using of a gasoline stove; the reservoir to be filled by daylight only, and when the stove is not in use. Warranted by the assured that no artificial light will be permitted in the room when the reservoir is being filled, and no gasoline except that contained in said reservoir shall be kept within the building, and not more than five gallons in a tight, entirely closed metallic can, free

from leak, on the premises adjacent thereto," and prohibits the use of gasoline for any other purpose or in any other manner, and the insured has no gasoline stove on the premises, the use, keeping, or allowing of gasoline on the insured premises for any other purpose would avoid the policy, and the permission given in the policy to keep, use, and allow only such gasoline as was contained and confined in the reservoir of said gasoline stove, did not authorize plaintiff or any one occupying the premises under or with him to use or allow gasoline for any other purpose or in any other manner. Insurance Co. v. Gunther, 116 U. S., 113.

*Smith, Templeton & Tolbert,* for appellee.—The gasoline which was instrumental in causing the fire whereby the insured property was destroyed, and which was without appellee's knowledge or consent procured and brought upon the insured premises by his wife for domestic purposes and for temporary use only, was not "kept," "used," or "allowed" on said premises so as to come within the prohibitory terms of the policy. But such provisions of the policy were intended to prohibit only the habitual keeping, using, or allowing of gasoline on such premises and same should be so construed. Insurance Co. v. Shearman, 50 S. W. Rep., 598; Insurance Co. v. Shearman, 43 S. W. Rep., 930; Insurance Co. v. Green, 41 S. W. Rep., 74, and authorities therein cited; Assurance Co. v. Crawford, 59 S. W. Rep., 916; Insurance Co. v. Bills, 87 Texas, 551; Insurance Co. v. Robinson, 64 Ill., 265; Boon v. Insurance Co., 40 Conn., 575; Mears v. Insurance Co., 92 Pa. St., 15 (This case is very much in point and is cited with approval by our court in the case of Insurance Co. v. Green, 41 S. W. Rep., 76 and 77; a writ of error was refused in this case). First Cong. Church v. Insurance Co., 19 Law. Rep. Ann., 587; Faust v. Insurance Co., 30 Law Rep. Ann., 783; Smith v. Insurance Co., 30 Law Rep. Ann., 368, 372, 373, and authorities there collated; 1 Wood on Fire Ins., sec. 84.

WILLIAMS, ASSOCIATE JUSTICE.—Certified question from the Court of Civil Appeals for the Fifth District. The certificate is as follows:

"The appellant issued to the appellee an ordinary standard fire insurance policy covering a house and household furniture. Among other provisions, the policy contained the following: 'Permission is hereby given for the using of a gasoline stove; the reservoir to be filled by daylight only, and when the stove is not in use. Warranted by the assured that no artificial light will be permitted in the room when the reservoir is being filled, and no gasoline, except that contained in the reservoir, shall be kept within the building, and not more than five gallons in a tight, entirely closed, metallic can, free from leak, on the premises adjacent thereto.

" 'This entire policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, benzine, gasoline, etc.'

"The ground urged by appellant to avoid liability on the policy is the use of gasoline as shown by the testimony of appellee, which is as follows: 'About noon of the 26th day of March, 1901, as I left the house, my wife requested me to send up a gallon of gasoline for use on the premises. I declined to do so. She subsequently sent to the grocer and bought a gallon, a part of which was used by her that afternoon, so she told me that evening when I went home. I was not aware that the gasoline had been brought on the place until about 7 o'clock that night, when I was home for the night, when she told me she had gasoline on the premises, and that she had not used it all, and desired to know of me what she should do with the portion unused. I told her to throw it out. I was reading at the time and paid no further attention to it; but I supposed she had thrown it out. About 10 o'clock at night, having occasion to go into my back yard, I passed through the house, with a view of going out the back door, through the kitchen. It being dark, I struck a match in the kitchen to see how to get out of the back door. The match burned low, and seeing what I supposed to be a little tub sitting on the floor, containing what I supposed was dirty water, I threw the unburned portion of the match into this tub. As I did so the flame shot up out of the tub. I attempted to open the door and throw the tub out, holding the tub with one hand and attempting to open the door with the other. The tub had become hot and I dropped my hand hold on the tub, and in falling it tilted and the burning gasoline ran out on the floor, and as a result the property was destroyed.' It was also shown that no gasoline stove was used on the premises.

"Questions.—1. Do the facts above stated authorize a recovery by appellee, or was the use of gasoline and the origin of the fire in the manner stated such a violation of the terms of the policy as caused a forfeiture thereof and prevented a recovery thereon?

"2. Is the temporary having of a small quantity of gasoline on insured premises, to be used for household purposes, other than for fuel, a violation of such prohibitory clause?"

The question upon which the decision of both of those put by the court depends is: Do the facts stated show a breach of the warranty that no gasoline shall be "kept, used, or allowed" on the premises? The fact that the fire was caused by the gasoline, or by the negligence of the insured, if there was such negligence, is not, by the policy as stated, made a ground for avoiding it; and it is properly conceded by appellee that the permission to use a gasoline stove does not affect the case. The question, therefore, is, as stated, whether or not the gasoline, in the sense in which those words are used in the contract, was "kept, used, or allowed" on the premises. We find it unnecessary to determine the extent to which appellee is responsible for the acts of his wife to which he did not consent. For the purposes of this case, alone, it will be assumed that all that was done is properly chargeable to appellee.

That the gasoline was not "kept" on the premises is clear. "It is not enough, according to this phraseology, that hazardous articles are

upon the premises. They must be there for the purpose of being stored or kept." Hynds v. Insurance Co., 11 N. Y., 554. That this is substantially true, all of the authorities agree. Mears v. Insurance Co., 92 Pa. St., 15; Insurance Co. v. Whiteford, 31 Md., 219; Insurance Co. v. Simmons, 30 Pa. St., 299; First Cong. Church v. Insurance Co., 158 Mass., 479.

As the word "kept" means that the prohibited article must not only be upon the premises, but must be there for keeping or storing, and not merely upon a temporary occasion for a different purpose, it follows that there must be some degree of permanency in its continuance there. The word implies all this. The word "used" is employed in immediate connection with the word "kept," in order, we think, to extend the provision so as to exclude the idea that the article must be stored or deposited on the premises. But the purpose in the use of each word is to provide against the same danger, viz., that which would arise from the habitual, constant, or continued exposure of the property through the presence or use of the article.

One word forbids the permanent or habitual keeping of the dangerous thing, and the other a like use of it without the actual depositing or storing of it on the premises.

In Mears v. Insurance Co., supra, Chief Justice Paxson said: "We are not disposed to give to the word 'use' in this policy the narrow construction claimed for it. It must have a reasonable interpretation, such as was probably contemplated by the parties at the time the contract was entered into. Nearly every policy of insurance issued at the present time contains this condition, or a similar one. What is intended to be prohibited is the habitual use of such articles, not their exceptional use upon some emergency. The strict rule claimed by the defendants would prevent the assured from painting his house or cleaning his furniture, as it would be difficult to do either without using some of the prohibited articles."

The same interpretation of the word is approved by the same court in Insurance Co. v. Simmons, supra, in which the language of Lord Tenterton in Dobson v. Sotheby, 1 Moody & Malk, 481, is quoted as follows: "I think the condition must be understood as forbidding only the habitual use of fire or the ordinary deposit of hazardous goods, not their occasional introduction, as in this case, for a temporary purpose connected with the occupation of the premises."

The same principle is recognized in Insurance Company v. Fischer, 83 Federal Reporter, 807; and we find no dissent from it in any of the cases relied on by the appellant. Nearly all of those decisions are thoroughly consistent with it, the prohibited article having been habitually used or kept on the premises, and the discussions being upon other points.

The judgment in the case of Heron v. Insurance Company, 180 Pennsylvania State, 257, seems to conflict with the rule previously laid down by the Supreme Court of that State. The immediate question as to

what constituted a using was not, however, discussed, it being assumed that the forbidden articles had been used.

In Insurance Company v. Commissioners, 54 Kansas, 732, it was merely held that the constant use of gasoline on the premises for several days was a violation of the condition of the policy. There was no discussion of the question as to what constituted a using of the article, the question discussed being whether or not the owner of the premises was responsible for the act of the persons who brought the article upon them.

We think the rule as above quoted is the true one, and therefore conclude that, in the sense of the policy, the gasoline was not used.

It remains to consider whether or not the facts show that the gasoline was "allowed" on the premises.

In Insurance Company v. Fischer, supra, this word was held to mean the same as' if expressed "allowed to be kept or used."

The following from Judge Taft's opinion is regarded by us as entirely sound:

"The court construed the word 'allowed' to mean 'allowed to be kept or used.' The evidence tended to show that gasoline was carried through the store from a shed in the back yard, not connected with the main building, where the stock of goods was insured. It was conceded that such carrying of gasoline through the store, without leaving it there permanently, did not come within the adjudicated meaning of the terms 'kept and used;' but it was contended that the word 'allowed' embraced more'than 'kept or used,' and was sufficiently broad to include the carrying of gasoline through the store for immediate delivery to customers, even though gasoline was not allowed to be stored on the premises,. or to remain there longer than the time required to carry it from the back door to the customer, and to deliver it to him. The court construed the word 'allowed' as if inserted for the purpose of making it clear that the condition would be broken whether the keeping and using was done by the insured himself, or was allowed or permitted by him to be done by some one else. The argument made on this construction is that under it the word 'allowed' is merely redundant, and adds nothing to the meaning of the other two words, because it has often been adjudicated that they are broad enough to cover, not only the act of the insured, but also the act of any person whom the insured may permit or allow to keep or use gasoline upon the premises, and in some cases even the act of a tenant in keeping gasoline against the express command of the insured. The mere fact that the words 'kept or used' might, by construction, be made wide enough to include 'allowed,' does not require of us, when the word 'allowed' is expressly made a part of the policy, to give it any different meaning from what it would have when it was implied from the use of other words. The habit of using apparently redundant expressions in statutes and contracts and deeds, for the purpose of excluding any possibility of misconstruction, is very frequent. It justifies us in giving the word 'allowed' its ordinary meaning, instead of attributing to it a strained and vague significance, which will defeat.

the policy. The duty of the court, where the meaning is ambiguous, is to construe the words·used against the insurer, who framed them, so as to validate the policy, rather than destroy it."

To the reasons given it may be added that it is unreasonable to suppose that the parties intended a forfeiture for the mere allowance of acts or conditions, which would not operate a forfeiture if done or pro-duced by the insured himself. As the gasoline was not "kept or used," it necessarily follows that it was not allowed.

The facts stated do not show a violation of the warranty set out in the certificate, nor prevent a recovery because of such warranty.

The second question is answered in the negative.